UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BGN DEVELOPMENT CORPORATION et al., <br><br> Plaintiffs, <br><br> v. <br><br> MOOSIC BOROUGH, et al., <br><br> Defendants. | CIVIL ACTION NO. 3:23-CV-01658 <br><br> (MEHALCHICK, J.) |

**MEMORANDUM**

This dispute is before the Court upon its removal from Luzerne County Court of Common Pleas on October 5, 2023. (Doc. 1). Plaintiffs BGN Development Corporation ("BGN") and Lynn Kokinda ("Kokinda") (collectively, "Plaintiffs") first filed this lawsuit on September 7, 2023, against Defendants Moosic Borough ("the Borough"), Moosic Borough Council ("the Council"), Moosic Borough Planning Commission ("the Commission"), Moosic Borough Zoning Board of Adjustments ("the Board") (collectively, "Moosic Defendants"), Vesper Northeast LP ("Vesper Northeast"), Vesper Management, Vesper Management, LLC, Vesper Property Group, Ltd., (collectively, "Vesper Defendants"), and Pittston Township ("Pittston"). (Doc. 1-3). Now before the Court are three motions to dismiss filed by Pittston, Vesper Defendants, and Moosic Defendants, respectively. (Doc. 3; Doc. 5; Doc. 29). For the following reasons, Moosic Defendants' motion to dismiss will be **GRANTED**, as this Court agrees that Plaintiffs do not have standing to bring this action at this time. (Doc. 29). Vesper Defendants and Pittston's motions to dismiss will each be

**DENIED** as **MOOT**. (Doc. 3; Doc. 5). Plaintiffs' complaint will be **DISMISSED without prejudice**. (Doc. 1; Doc. 1-3).

I.     PROCEDURAL AND FACTUAL BACKGROUND

The following factual summary is taken from the complaint. (Doc. 1-3). On January 14, 2022, Vesper Defendants purchased approximately 167.3 acres of real property located across the Borough and Pittston. (Doc. 1-3, ¶ 37). On this land, Vesper Defendants seek to build the "Vesper Northeast Logistics Park," a "single warehouse in excess of one million square feet, with 65% of the warehouse being situated in the Borough, and 35% of the warehouse being situated in Pittston" ("the Project"). (Doc. 1-3, ¶¶ 23, 38). The gravamen of Plaintiffs' claims stems from their inability to participate in local proceedings involving the Project due to lack of notice about relevant hearings and votes, as well as the impact the Project will have on their properties once development commences. (Doc. 1-3, at 39-56). Broadly, this lawsuit stems from Plaintiffs' opposition to the Project. (Doc. 1-3).

On September 7, 2023, Plaintiffs filed the instant complaint in the Luzerne County Court of Common Pleas. (Doc. 1-3). The case was removed to this Court on October 5, 2023. (Doc. 1). In their complaint, Plaintiffs allege the following Counts: Count I—Violation of Plaintiffs' Procedural Due Process Rights and Equal Protection under 42 U.S.C. § 1983 by Moosic Defendants; Count II—Violation of BGN's Procedural Due Process Rights and Equal Protection under 42 U.S.C. § 1983 by Moosic Defendants; Count III—Violation of Plaintiffs' Substantive Due Process Rights under 42 U.S.C. § 1983 by Moosic Defendants; Count IV—Violation of the PA Sunshine Act against all Plaintiffs by Moosic Defendants; Count V—Violation of the Municipal Planning Code against Plaintiffs by Defendants; Count VI—Violation of 25 Pa. C.S.A. § 5741 against Plaintiffs by Moosic Defendants; Count VII

Moosic Defendants' "Conditional Approval of the Application was Arbitrary, Capricious, Unreasonable, and Contrary to State and Local Laws"; Count VIII—Negligence against Plaintiffs by Defendants; and Count IX—Ordinance 11-01 of 2021 Constitutes Illegal Spot Zoning against Plaintiffs by Pittston. (Doc. 1-3, at 39-56).

On October 12, 2023, Pittston filed a motion to dismiss and on October 26, 2023, Pittston filed a brief in support. (Doc. 3; Doc. 9). Plaintiffs filed a brief in opposition to Pittston's on November 20, 2023. (Doc. 21). Pittston filed a reply brief on December 4, 2023. (Doc. 26).

On October 16, 2023, Vesper Defendants filed a motion to dismiss. (Doc. 5). On November 13, 2023, Vesper Defendants filed a brief in support of their motion. (Doc. 17). Plaintiffs filed a brief in opposition to Vesper Defendants' motion on November 27, 2023. (Doc. 25). On January 5, 2024, Vesper Defendants filed a reply brief. (Doc. 32).

On December 14, 2023, Moosic Defendants filed a motion to dismiss, along with a brief in support of their motion. (Doc. 29; Doc. 29-1). Plaintiffs filed a brief in opposition on January 12, 2024. (Doc. 33). On February 9, 2024, Moosic Defendants filed a reply brief. (Doc. 36). Accordingly, all three motions are ripe and ready for discussion.

II. **LEGAL STANDARDS**

　　A. MOTION TO DISMISS PURSUANT TO RULE 12(B)(1)

"Under Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and

3

objections become moot." *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir. 1994).

Legal insufficiency of a claim generally does not eliminate a federal court's subject-matter jurisdiction. *Growth Horizons, Inc. v. Delaware Cnty., Pa.*, 983 F.2d 1277, 1280 (3d Cir. 1993) (collecting cases). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). Federal courts may hear cases "in which a well-plead complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 28 (1983).

Courts considering a jurisdiction-based dismissal have two standards in evaluating whether jurisdiction is proper, with the applicable standard determined by the nature of the challenge to jurisdiction itself. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (in reviewing a Motion to Dismiss pursuant to Rule 12(b)(1), this Court must distinguish between facial attacks and factual attacks). "[J]urisdictional challenges take two forms: (1) parties may make a 'factual' attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdiction; or (2) they may assert a 'facial' challenge, which assumes the veracity of the complaint's allegation but nonetheless argues that a claim is not within the court's jurisdiction." *Corman v. Torres*, 287 F. Supp. 3d 558, 566 (M.D. Pa. 2018) (citing *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F. 3d 99, 105 (3d Cir. 2015)). If reviewing a factual attack, a court may consider evidence outside the pleadings. If a facial attack, a court "considers the allegations of the complaint and documents referenced

therein and attached thereto in the light most favorable to the plaintiff." *Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp. 3d 278, 289 (M.D. Pa. 2018) (citing *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

B. MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec.*

*Litig.,* 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

### III. DISCUSSION

Moosic Defendants challenge this Court's jurisdiction to hear this case. "Article III of the Constitution restricts the 'judicial power' of the United States to the resolution of cases and controversies." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006). To bring a case or controversy before a federal court, a plaintiff must have "standing." *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3d Cir. 1994). "Standing involves both constitutional and prudential limitations on federal court jurisdiction." *Storino v. Borough of Point Pleasant Beach*,

322 F.3d 293, 296 (3d Cir. 2003). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro*, 458 F.3d at 188; *see also Storino*, 322 F.3d at 296. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). If Plaintiffs do not have standing to bring their action, this Court does not have jurisdiction to hear this matter.

Moosic Defendants aver that Plaintiffs do not have standing to bring this action because they have failed to allege an injury in fact and because their claims are not yet ripe. (Doc. 29-1, at 7-9). Moosic Defendants also aver that Plaintiffs' claims are barred by the finality rule, which in the context of land-use cases requires the relevant authorities to have an opportunity to come to a final decision as to how regulations will apply to a pertinent piece of land. (Doc. 29-1, at 9). Plaintiffs maintain that they "have standing to bring this claim, their claims are ripe for adjudication, and their claims are not barred by the Finality Rule." (Doc. 33, at 12).

A. Injury-In-Fact

Moosic Defendants argue that Plaintiffs have failed to allege they suffered an injury-in-fact because "Plaintiffs themselves note the speculative nature of their claimed injuries where they acknowledge there has been no final approval or submission of a final plan." (Doc. 29-1, at 7). Citing various Pennsylvania state court cases, Plaintiffs refute this contention and maintain that they have alleged an injury-in-fact. (Doc. 33, at 12).

"[T]he injury-in-fact element [of standing] is often determinative." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009). To allege an injury-in-fact, Plaintiffs must allege they suffered a concrete, particularized harm that is "actual or imminent, not

7

conjectural or hypothetical" and that "affects the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). This injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. Additionally, it must be likely that the injury is a redressable by a favorable decision in the case. *Storino*, 322 F.3d at 296.

"When a plaintiff claims that a defendant's threatened injury is the source of his standing, he must show that the threatened injury is so imminent as to be 'certainly impending.'" *Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 122 (3d Cir. 1997) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155–58 (1990)). In the land use context, the Third Circuit has found that "a claim that a building project would increase traffic, pollution, and noise in the area residents' neighborhood [is] sufficiently concrete and particularized" to be considered a sufficient injury-in-fact. *Society Hill Towers Owners' Assoc. v. Rendell*, 210 F.3d 168, 176 (3d Cir. 2000).

Plaintiffs allege that the Project will impact the aesthetics, environment, traffic, safety, and sewerage around their property. Such injuries have been found sufficient to establish standing by the Third Circuit in land use cases. *See Society Hills Towers*, 210 F.3d at 176; *see also Taliaferro*, 458 F.3d at 188. However, in such cases, the challenged land development had been previously approved by the relevant necessary agencies prior to the litigation being filed. *See Society Hills Towers*, 210 F.3d at 176 (plaintiffs challenging approval of a federal grant); *see also Taliaferro*, 458 F.3d at 186 (plaintiffs challenging a granted variance request). Here, that is not the case. The complaint does not support that Plaintiffs' alleged harms are "certainly impending." *Magnesium Elektron, Inc.*, 123 F.3d at 122. The complaint is rife with speculation as to whether the Project's development will ever be approved by the necessary agencies in

both the Borough and Pittston, such that the development can move forward beyond the "conditional approval" stage. (Doc. 1-3, ¶¶ 81, 92-97, 161-65). In particular, Plaintiffs allege, "[p]lans for the [Project] remain ever-changing," "outstanding issues regarding development existed both before and after *conditional* approval was granted," "[n]o one seems to have a clear picture of what the Project will specifically entail, leaving residents to *expect* the worst," "as of the latest meeting of Defendant Commission on August 9, 2023, residents were informed that Vesper Defendants do not have a Highway Occupancy Permit ["HOP"], and as such, cannot seek to widen Powder Mill Road," "[t]o date, no HOP [which is necessary for the Park's development] has been issued to Vesper Defendants by PennDOT," and "Borough Defendants continue to take strides to facilitate the Project *even though it is at 'a standstill,'* per Defendant Commission." (Doc. 1-3, ¶¶ 81, 94, 96, 134, 135). Further, Plaintiffs allege that, according to the Borough Commission, "the Project is presently stalled. . ." and that the previous National Pollutant Discharge Elimination System Permit issued for the project (and that is required for the project to proceed) "may be expired" and thus "it is unknown what plans were previewed prior to the issuance of the Permit versus the most up to date plans." (Doc. 1-3, ¶¶ 162, 163, 165). Plaintiffs' allegations therefore suggest that, while Defendants continue to prepare for the Project, its future is uncertain at best.

Additionally, Plaintiffs' complaint includes numerous factual allegations that undercut their position that any of the potential safety, sewerage, and traffic harms they cite are likely, never mind imminent. For instance, Plaintiffs' safety concern allegations remain in conjecture, as the complaint makes clear that the review process for such concerns has yet to be completed. (Doc. 1-3, ¶¶ 48-59). Plaintiffs' safety concerns appear to relate to the potential for a fire "or other catastrophic event" at the warehouse. (Doc. 1-3, ¶ 57). However, Plaintiffs

9

admit that neither the Moosic nor Pittston Fire Departments have made known or commented on any proposed "fire suppression systems" or water main infrastructure, as these Departments do not yet know the contents or occupants of the utility plans drafted in connection with the Project. (Doc. 1-3, ¶¶ 48, 50). Thus, Plaintiffs prematurely raise these concerns, as they would be better discerned after the Project has officially been approved and these Departments are better able to anticipate the resulting safety issues and/or safety measures that may be required. (Doc. 1-3, ¶¶ 48-59).

Likewise, Plaintiffs' sewerage concerns are unfounded. (Doc. 1-3, ¶¶ 60-68). Plaintiffs allege that the relevant authorities, including the Lackawanna River Basin Sewer Authority and the Lower Lackawanna Valley Sanitary Authority, have each submitted letters stating that both entities "have *adequate treatment and conveyance capacity* within their facilities to accommodate the [Project's] development." (Doc. 1-3, ¶¶ 63, 66). Plaintiffs also allege that hired engineers have authored an opinion that the existing Borough sewerage collection system has "sufficient capacity," to accommodate the Project. (Doc. 1-3, ¶ 62). As Plaintiffs do not further allege any basis for the sewerage harm they anticipate, the complaint does not support that any sewerage issues are likely if the Project were to be developed.

As for Plaintiffs' traffic concerns, Plaintiffs allege that Vesper Defendants' Highway Occupancy Permit ("HOP") application, which is related to the transportation infrastructure development needed for the Project, was rejected by the relevant governing agency PennDOT, and returned to Vesper Defendants for "necessary revisions." (Doc. 1-3, ¶ 80). Plaintiffs allege "to date, no HOP has been issued to Vesper Defendants by PennDot." (Doc. 1-3, ¶¶ 80-81). Accordingly, based on the allegations in the complaint, it appears the Project cannot even proceed until PennDOT finds that the traffic concerns cited are adequately accounted for by

Vesper Defendants' and their HOP application is approved. Regardless, courts in this Circuit have found anticipated increased traffic to be insufficient as an injury-in-fact in land use cases. *See Hartz Mountain Indus., Inc. v. Polo*, CIV.A. 05-2530 (JAP), 2005 WL 2807355 (D.N.J. Oct. 26, 2005) (finding allegations that a building project would increase traffic insufficient to establish an injury-in-fact even where these allegations were supported by expert reports asserting that increased traffic due to a project would "cause delays and difficulties in passing through and accessing venues in the [affected] area").

Considering *supra*, "[o]ne cannot describe how the [Plaintiffs] will be injured without beginning the explanation with the word 'if.'" [1] *Storino*, 322 F.3d at 297-98. Plaintiffs' sewerage concerns may become actualized *if* the sanitary authorities they cite in their complaint are wrong about the capacity of the facilities they discuss in their letters. (Doc. 1-3, ¶¶ 63, 66). Plaintiffs may experience increased traffic *if* Vesper Defendants ever receive approval for their HOP application. (Doc. 1-3, ¶¶ 80-81). Plaintiffs may experience increased safety concerns *if* Defendants achieve the authorization needed to begin developing the

---

[1] This case differs from *Taliaferro v. Darby Township Zoning Board*, in which the Third Circuit found property owners near a proposed storage facility building project had standing to sue under 42 U.S.C. § 1983 because the property owners alleged that their property values would be diminished and neighborhood blighted if a building project ensued in accordance with a granted variance. 458 F.3d 181 (3d Cir. 2006). In *Taliaferro*, the Third Circuit stated that the alleged "injury [was] not conjectural; [Plaintiffs] contend that the construction of the storage facility will lower their property values, reduce the aesthetics in their community and create excess noise and traffic, including heavy truck traffic on their residential streets. As in *Society Hill*, these injuries are sufficiently concrete and particularized." 458 F.3d at 190-91. However, in *Taliaferro* the property owners' lawsuit stemmed from a challenge to the grant and final approval of a variance, which they appealed throughout the state courts. 458 F.3d at 185-86. Here, unlike in *Taliaferro*, Plaintiffs here allege there are various permits and applications that must still be granted for the Project to move forward. (Doc. 1-3, ¶¶ 80, 162, 163, 165). Accordingly, as there has been no final approval of the Project as was found in *Taliferro*, Plaintiffs' claims remain wholly conjectural.

11

Project and thereby submit the necessary proposals to the Borough and Pittston Fire Departments. (Doc. 1-3, ¶¶ 48, 50, 135). Because "plaintiffs' claimed injury depends on a series of future events, none of which are 'certainly impending,'" Plaintiffs do not have standing to bring this action. (Doc. 1-3, ¶¶ 59, 68, 91, 135); *see Thompson v. Horsham Tp.*, 576 F. Supp. 2d 681, 690-91 (E.D. Pa. 2008) (finding plaintiffs did not have standing in a land development case where they complained of the threat posed to their land if the development were to proceed); *see also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending.'").

Still, to support their argument that they do have standing to bring this action, Plaintiffs argue that "[t]heir inability to voice their concerns with respect to the Project and its negative impact on their property ownerships and land use has essentially green-lit further developments, the proverbial 'bell' has been rung." (Doc. 33, at 15-16). Plaintiffs fail to define these further developments or point to any negative impact caused by the meetings or votes Plaintiffs allege they were excluded from beyond "the proverbial 'bell'" being rung. (Doc. 33, at 15-16). While Plaintiffs maintain that because they were unable to voice their concerns, "the Project is now underway," the allegation Plaintiffs cite to support this proposition directly refutes it, providing Moosic "Defendants continue to take strides to facilitate the Project *even though it is at a 'standstill' per Defendant Commission*." (Doc. 1-3, ¶ 135; Doc. 33, at 16). Thus, the Court finds these arguments unpersuasive, especially considering Plaintiffs have failed to direct the Court to any compelling case law that supports their contention that they have suffered a concrete, particularized harm. Plaintiffs have therefore not met their burden to allege the required "invasion of a legally protected interest which is concrete and

12

particularized and actual or imminent" to meet their burden. *Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 119 (3d Cir. 1997); *see also Lujan*, 504 U.S. at 560. Accordingly, the Court finds that Plaintiffs' pleadings do not support that they suffered an injury-in-fact and thus Plaintiffs do not have standing to bring this action in this Court.

    B.   RIPENESS & THE FINALITY RULE

Even if Plaintiffs' complaint sufficiently stated that they have suffered an injury-in-fact, their claims would nonetheless fail for ripeness. An action that is brought prematurely is not ripe for the purposes of federal litigation. *Horsham*, 576 F. Supp. 2d at 691. "Ripeness is a jurisdictional inquiry, rooted in both the case or controversy requirement of our Constitution's Article III and judge-made prudential limitations on the exercise of judicial authority." *Congregation Anshei Roosevelt v. Plan. and Zoning Bd. of Borough of Roosevelt*, 338 F. App'x 214, 216 (3d Cir. 2009). "The basic rationale of the ripeness doctrine is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements ....'" *Bais Brucha Inc. v. Twp. of Toms River, New Jersey*, CV213239ZNQRLS, 2024 WL 863698, at *4 (D.N.J. Feb. 29, 2024) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Horsham*, 576 F. Supp. 2d at 691; *Tex. v. United States*, 523 U.S. 296, 300 (1998). "If a dispute is not yet ripe, a court should abstain from ruling until the dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine. *Horsham*, 576 F. Supp. 2d at 691; *see also Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004).

In land use cases brought under Section 1983, a property owner's claim is not ripe until state authorities have the opportunity to reach a final, definitive position as to how they will apply a particular regulation to a piece of land. *See Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1291 (3d Cir. 1993); *see also Williamson Planning Comm. v. Hamilton Bank*, 473 U.S. 172, 191 (1985); *Lauderbaugh v. Hopewell Twp.*, 319 F.3d 568, 574 (3d Cir. 2003) ("[i]t is well established that, in [Section] 1983 cases involving land-use decisions, a property owner does not have a ripe claim until the zoning authorities have had an opportunity to arrive at a final, definitive position regarding how they will apply the regulations at issue to the particular land in question."); *see also Smalis v. City of Pittsburgh*, 2:19-CV-1609-NR, 2024 WL 1076108, at *2 (W.D. Pa. Mar. 12, 2024), *reconsideration denied*, 2:19-CV-1609-NR, 2024 WL 2319508 (W.D. Pa. May 22, 2024). Here, no such finality has been achieved. Plaintiffs have failed to allege that the relevant state authorities have come to a "final, definitive position," regarding the Project and the potentially implicated land, instead alleging only that the Project has received "conditional approval," and that many of the necessary permits and approvals remain pending. (Doc. 1, ¶¶ 81, 94, 96; Doc. 29-1, at 7). Thus, their claims are not ripe.

Plaintiffs submit that their "constitutional claims are 'ripe' because the Borough Defendants' actions and/or inactions have already deprived Plaintiffs of certain constitutional rights." (Doc. 33, at 17). Plaintiffs also aver that, while "it is true that a conditional approval has been granted with respect to the Project. . . it is apparent that despite their reliance on the term "conditional," the Borough Defendants clearly have no intention of obstructing the Vesper Defendants' intended development of the lands in question." (Doc. 33, at 18). Further, Plaintiffs point out that a variance has already been granted to enable the Project. (Doc. 33, at 18).

14

The Court is still not convinced this action is ripe. Plaintiffs clearly allege that the Project is at a "standstill" for lack of final approval and that "no one seems to have a clear picture of what the Project will specifically entail." (Doc. 1-3, ¶¶ 96, 135). While some of the necessary approvals and variances may have been granted, the Project is still stalled such that there has been "no final, definitive position regarding how [Defendants] will apply the regulations at issue to the particular land in question." *New Jersey Chinese Cmty. Ctr. v. Twp. of Warren*, 712 Fed. Appx. 196 (3d Cir. 2017) (quoting *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 597 (3d Cir. 1998)). Further, as argued by Moosic Defendants, Plaintiffs could seek a final adjudication of the variance approval pursuant to the Pennsylvania Municipal Planning Code and further still the Court of Common Pleas. *See Thompson v. Horsham Twp.*, 576 F. Supp. 2d 681 (E.D. Pa. 2008); *see also Pakdel v. City & Cnty. of San Francisco, California*, 594 U.S. 474, 480 (2021) (providing that "plaintiff's failure to properly pursue administrative procedures may render a claim unripe if avenues still remain for the government to clarify or change its decision."). Until these actions are taken, or there is some concrete authorization that allows the Project to begin inflicting injury onto Plaintiffs, this case will not be ripe. *Cf. HE Grp., Inc. v. Borough of Middletown*, 1:20-CV-00132, 2021 WL 808747, at *11 (M.D. Pa. Mar. 3, 2021) (finding finality achieved for the purpose of ripeness because the state's decisions were final enough that injury could be inflicted on plaintiffs).

Lastly, this Court more specifically addresses the finality rule as raised by Moosic Defendants. (Doc. 29-1, at 9-10). The finality rule "does not require a plaintiff to exhaust administrative remedies before bringing suit, it simply requires that claims not be brought prematurely in federal court before an administrative decision 'has been formalized and its effects felt in a concrete way by the challenging parties.'" *Borough of Middletown*, 2021 WL

808747, at *11. Here, there has yet to be such a decision. As Plaintiffs allege, the Project remains at a standstill and its contours are known by "no one." (Doc. 1-3, ¶¶ 96, 135). Because Plaintiffs have cited no caselaw to the contrary, the Court again here finds that Plaintiffs' claims are not ripe and therefore they lack standing to bring this action. *See Marriott Senior Living v. Springfield Tp.*, 78 F. Supp. 2d 376, 386-387 (E.D. Pa. 1999) (a municipality's participation in an informal procedure to discuss preliminary plans and exploration of proposals for land development fails to prove finality).

Having found Plaintiffs lack standing at this time, this Court does not have jurisdiction to further opine on this matter. Moosic Defendants' motion to dismiss is thus **GRANTED** (Doc. 29) and the complaint (Doc. 1-3) is to be **DISMISSED**.

### IV.   LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Here, the Court finds amendment to the complaint would not be futile. "Caselaw [ ] confirms that a court may grant leave to amend deficient allegations of standing." *Lezark v. I.C. Sys., Inc.*, 2:20-CV-00403-CCW, 2023 WL 4571457, at *4 (W.D. Pa. July 18, 2023). Third Circuit precedent supports this Court's authority to grant leave to amend even having found that the allegations in the original complaint are insufficient to establish standing. *See Newark Branch, NAACP v. Town of Harrison, N.J.*, 907 F.2d 1408, 1417–18 (3d Cir. 1990) (the district court

abused its discretion when it declined to exercise its discretion over a motion for leave to amend after dismissing complaint for lack of standing); *Potter v. Cozen & O'Connor*, 46 F.4th 148, 158 (3d Cir. 2022). Thus, Plaintiffs will be granted leave to amend their complaint.

## V.   CONCLUSION

Based on the foregoing, Moosic Defendants' motion to dismiss is **GRANTED**. (Doc. 29). Pittston and Vesper Defendants' motions to dismiss are denied as **MOOT**. (Doc. 3; Doc. 5). Plaintiffs' complaint is **DISMISSED without prejudice**. (Doc. 1-3). Plaintiffs are directed to file their amended pleading within 21 days of this Memorandum, on or before Friday, August 16, 2024.

An appropriate Order follows.

Dated: July 26, 2024                                           *s/ Karoline Mehalchick*
                                                            **KAROLINE MEHALCHICK**
                                                            **United States District Judge**